■ In the Matter of PAUL H. (ANONYMOUS), Appellant.—In a proceeding pursuant to article 7 of the Family Court Act, the appeal is from an order of the Family Court, Dutchess County, dated April 2, 1974, which, upon a prior determination that appellant was a person in need of supervision (PINS), placed him in the custody of a New York State Division For Youth facility. Order reversed, on the law and in the interest of justice, without costs, and

proceeding remanded to the Family Court for further proceedings not inconsistent herewith. Appellant, Paul H., at about 14 years of age, was brought before the Family Court pursuant to two PINS petitions. The first, filed by his father, alleged in substance that Paul was a truant and generally disobedient and beyond the father's control. The second, filed by the attendance officer of the Arlington Central School District, also alleged that Paul was a truant. On February 21, 1974, a fact-finding hearing was held on both petitions. Paul appeared with his father, but was not represented by an attorney. He was advised of the contents of the two petitions, that he could be placed in an institution for up to 18 months and that he was entitled to a hearing in which his father would testify. Additionally, he was informed of his right to remain silent and his right to an attorney. When asked by the court what he wished to do, he stated, "I don't really care, to tell you the truth". He later admitted that the allegations in the first petition were true and similarly admitted the truthfulness of the allegations in the second petition after again being perfunctorily informed of his right to an attorney. At no time in the proceeding was he informed of the desirability of being represented by counsel. Following his admissions, Paul was adjudicated a PINS. Prior to the dispositional hearing the probation department completed an investigation of Paul and his background. The probation report indicates that his home environment was less than ideal. The probation officer found that the home was "filthy with food, clothing and debris scattered about." The father, bacause of his ill health, is unemployed and cannot meet his everyday expenses. He accepted most of the blame for Paul's truancy and explained that because of his ill health he could not "adequately supervise" his son. The probation report recommended that Paul be immediately removed from his father's home. Following a dispositional hearing held on March 12, 1974, Paul was placed in the custody of the Department of Social Services for placement at the McQuade Foundation for 18 months. Approximately two weeks later the department filed a petition to terminate placement. A second dispositional hearing was held on April 2, 1974. At the conclusion of the hearing the court stated, "The boy isn't going to get the guidance he needs at home. The home isn't suitable at the present time * * *. [Appellant's] home environment is bad * * *. I would suggest that you seek counseling, Mr. [the father]. Make some effort to understand this boy." The court thereupon directed Paul's placement in a State Training School for 18 months. Appellant argues that the PINS adjudication should be vacated on two grounds: first, that the court abused its discretion in not substituting a neglect petition in place of the PINS petitions; and second, that the fact-finding hearing was defective, since appellant was denied his right to counsel. We agree on both grounds. Subdivision (b) of section 716 of the Family Court Act allows the court "On its own motion and at any time in the proceedings [to] substitute a neglect petition * * * for a petition to determine * * * whether a person is in need of supervision." This provision reflects a recognition by the Legislature that some children who are "in need of supervision" often are "neglected" and are better treated that way (see Committee Comments, McKinney's Cons. Laws of N. Y., Family Ct. Act, Book 29A, Part 1, p 301). The results of the investigation conducted by the probation department irresistably lead to the conclusion that Paul is a neglected child within the meaning of subdivision (f) of section 1012 of the Family Court Act. Moreover, the court's statements at the conclusion of the second dispositional hearing are tantamount to a finding of neglect (see *Matter of Richard C.,* 43 AD2d 862; cf. *Matter of Lloyd,* 33 AD2d 385). With regard to appellant's second argument we find,

based upon the circumstances herein, that there was no intelligent and knowing waiver of his right to counsel. Accordingly, we do not reach the question of whether, under article 7 of the Family Court Act, an infant has the capacity to effectuate a valid waiver of this right (see *Matter of Lawrence S.,* 29 NY2d 206). To constitute a valid waiver of the right to counsel "such waiver must be made with an apprehension of the nature of the charges * * * the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter" *(Von Moltke v Gillies,* 332 US 708, 724; *Matter of Lawrence S., supra).* When dealing with an infant, courts should be particularly solicitous to protect his rights and, in such cases, a " 'heavy burden' rests on the state to show a genuine waiver" *(United States ex rel. Stephen J. B. v Shelly,* 430 F2d 215, 218). In the present case the Family Court made no concerted effort to determine whether Paul, at the age of 14, with a third-grade reading ability, understood, or was capable of understanding, the importance of having an attorney or the significance of a waiver. Nor did the court alert him to possible defenses, other mitigating factors or the desirability of having counsel. Martuscello, Acting P. J., Latham, Cohalan, Brennan and Munder, JJ., concur.