■ In the Matter of LONG ISLAND ASSOCIATION FOR CHILDREN WITH LEARNING DISABILITIES, INC., et al., Appellants, v THOMAS SOBOL, as Commissioner of the New York State Education Department, et al., Respondents. (And Two Other Related Proceedings.)—Mikoll, J. Appeal from a judgment of the Supreme Court (Cobb, J.), entered January 31, 1991 in Albany County, which partially granted petitioners' applications, in three proceedings pursuant to CPLR article 78, to annul seven determinations of respondent State Education Department setting petitioners' interim tuition rates.

This appeal presents the following questions: (1) whether Supreme Court erred in finding that respondent Commissioner of Education acted rationally in basing the 1989-1990 interim tuition rates for Suffolk County preschool children with handicapping conditions on the rates set in preexisting contracts, (2) whether the Commissioner should be estopped from denying petitioners the offered and accepted rate adjustment under "option one" of a letter from respondent State Education Department dated July 21, 1989 (hereinafter the option letter), and (3) whether the Commissioner's determinations applying lower rates for Suffolk County children than for non-Suffolk County children for the same services violates the Equal Protection Clauses of both the State and Federal Constitutions (US Const, 14th Amend; NY Const, art I, § 11). In our view the judgment should be modified by reversing so much thereof as denied petitioners'* requests to annul the parts of the determinations which based the tuition rate for Suffolk County children upon the prior contracts on the grounds that such determinations were arbitrary and capricious and violative of petitioners' equal protection rights. The petitions should be granted as to such requests and the matter should be remitted to adjust petitioners' respective tuition rates in accordance with "option one" of the option letter.

Petitioners commenced these three CPLR article 78 proceedings to annul the Commissioner's determinations which based the tuition rate for Suffolk County children with handicapping conditions on previously signed contracts. Petitioners claimed that the determinations were arbitrary, capricious and irrational on the ground that the rates were not based on the options offered by the Commissioner but on contracts rendered invalid by a later statute and that the different rates violated their equal protection rights because children receiving the same services were treated differently. Answers were served and papers submitted. Supreme Court partially granted the petitions by granting a 2% increase to cover increased evaluation costs but denied petitioners' requests for the remainder of the rate adjustment offered by option one of the option letter. This appeal ensued.

Prior to July 1, 1989, educational services for preschool children with handicapping conditions were provided under

---

* Petitioners are providers of educational services for preschool children with handicapping conditions under contract with the county of a child's domicile pursuant to Education Law § 4406 and Family Court Act former § 236 (as amended by L 1989, ch 243, § 4).

Education Law § 4406 and Family Court Act former § 236 (as amended by L 1989, ch 243, § 4), which gave Family Court authority to approve the services and tuition. Providers of these services would contract with the county of a preschool child's domicile for a per-child tuition rate. Providers evaluated a child thought in need of these services and prepared and filed a petition for a Family Court order. No meetings, discussions or court appearances were involved. During April, May and June 1989, petitioners entered into contracts to provide future services to such children from July 1, 1989 through July 30, 1990. This system was found not to comply with applicable Federal law and a new program was enacted to achieve compliance (see, L 1989, ch 243). The new legislation made local school boards responsible for the provision of these special educational services and programs (Education Law § 4410 [2], [3] [a], [d]; [4] [a], [b], [d]; [5] [b], [f]).

The new law required the Commissioner to annually determine the tuition rate beginning with the 1990-1991 school year (Education Law § 4410 [10] [a] [i]). However, the 1989-1990 school year interim rates were to be established based upon the tuition rate for each preschool program in effect on June 30, 1989 (Education Law § 4410 [10] [b]). The Commissioner was to adjust such interim rates to the extent he deemed necessary and reasonable (Education Law § 4410 [10] [b]).

In the option letter at issue, petitioners and other providers were offered a choice of two options regarding their 1989-1990 tuition rate. Petitioners chose option one, which set the rate based on the rate in effect on June 30, 1989 plus an approved regional inflation factor and an added 2% increase to cover the cost of the new evaluation requirements. Petitioners claim that under option one they would enjoy a 10.8% increase rate adjustment. The Commissioner, however, did not set the rates based upon the option chosen by petitioners and respondents now claim that they were not aware of the preexisting contracts when the option one offer was made to petitioners. We agree with petitioners' argument that the determinations were arbitrary and capricious.

Education Law § 4410 (10) (b) (as added by L 1989, ch 243, § 2) gave the Commissioner, "subject to the approval of the director of the budget", authorization to set rates for the 1989-1990 school year. Rates agreed to in the earlier contracts were superseded by this enactment and thus became invalid and of no effect. The required interim rate, apparently set without knowledge of the preexisting contracts, was based on the

tuition rate in effect on June 30, 1989 and adjusted as deemed "necessary and reasonable" (Education Law § 4410 [10] [b]). This rate, offered to all providers, was accepted and relied on by petitioners.

We also find merit in petitioners' contention that the different rates based upon whether the children receiving the same educational services are from inside or outside Suffolk County violates their equal protection rights. The differentiations were not related to any purpose for which the new statute was enacted and, thus, had no rational basis.

Mahoney, P. J., Weiss, Yesawich Jr. and Harvey, JJ., concur. Ordered that the judgment is modified, on the law, with costs to petitioners, by reversing so much thereof as denied petitioners' request for the entire rate adjustment offered by respondent State Education Department as "option one" in a letter dated July 21, 1989; determinations annulled and petition granted to that extent, and matter remitted to respondent Commissioner of Education for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.